

THE ATTORNEY GENERAL

OF TEXAS

AUSTIN, TEXAS 78711

JOHN L. HILL
ATTORNEY GENERAL

November 3, 1976

The Honorable M. L. Brockette          Opinion No. H- 891
Commissioner
Texas Education Agency                 Re:  Role of Texas Educa-
201 East 11th Street                   tion Agency under the
Austin, Texas  78701                   Comprehensive Employment
                                       and Training Act, and
                                       related questions.

Dear Commissioner Brockette:

        You have asked several questions concerning the relation-
ship between Texas law and Title I of the Comprehensive
Employment and Training Act (CETA), 29 U.S.C. §§ 801-822
(1973), with respect to the receipt of funds and the admin-
istration of programs at the local level.  An understanding
of the problem requires a brief explanation of the system
set out in CETA for the disbursement of funds and planning
and implementation of manpower programs.  Under CETA, funds
are to be distributed to organizational units known as
"prime sponsors," which design and implement "comprehensive
manpower plans" for allocation of funds within their juris-
dictional areas.  The chief entities which can serve as
prime sponsors are the States themselves and units of "general
local government" meeting minimum population levels.  29
U.S.C. § 812(a) (1973).  Each eligible prime sponsor is to
submit to the Secretary of Labor a comprehensive manpower
plan, under which it will endeavor to provide services which
may include, inter alia, education, institutional skill
training, and manpower training.  29 U.S.C. § 811(3), (10)
(1973).  Upon approval of a prime sponsor's plan, the
Secretary of Labor is to grant funds directly to the prime
sponsor for implementing the plan.

Conflicts result when the CETA system for providing manpower services through prime sponsors is superimposed on the existing Texas educational system.  Texas law vests local control of educational functions in the boards of trustees of local public school districts, Education Code §§ 22.01, 23.01, 24.03, and provides for vocational and adult education to be provided by public school districts, public junior colleges, and state colleges and universities.  Education Code §§ 11.18(c), 31.31(b), 31.40.  Lacking the requisite general governmental powers, such as police and taxation powers, these entities are not considered units of "general local government" and cannot serve as prime sponsors.  See H.R. Rep. No. 93-659, 93rd Cong., 1st Sess. 2935, 2941 (1973).  On the other hand, cities and counties do possess general governmental powers and can qualify as prime sponsors under CETA --  thereby becoming able to provide educational services which would not otherwise be theirs to provide under Texas law.

We turn first to your question of whether cities and counties are given the authority under Texas statutes to serve as prime sponsors, and provide the types of services contemplated in CETA.  Our ability to answer this question is limited somewhat by the importance of the local city charter in establishing the existence or absence of such authority for a municipality, and by the inevitable ambiguity of an opinion written without a detailed examination of the activities to be carried out under each individual comprehensive manpower plan.  Each local prime sponsor will necessarily have some responsibility to determine such matters for itself.  We can, however, provide some general guidelines.

A home rule city may exercise all powers set out in the city charter so long as the powers are not denied by the Constitution or general statutes.  Burch v. City of San Antonio, 518 S.W.2d 540, 543 (Tex. Sup. 1975).  We have found no constitutional or statutory provision which would prohibit a home rule city from providing any of the services permissible under CETA.  Cities incorporated under general or special laws must look to their charters for authority.

Counties are given more limited powers under Texas law, with the requirement of express authorization in the Constitution and statutes for any function to be performed by the county and its commissioners.  Laramey, The Legal Authority of Texas Counties to Contract for the Delivery of Social Services to its (sic) Residents, 37 Tex. B.J. 953 (1974).  With this limitation in mind, this office has held that, by virtue of article 2351, V.T.C.S., a county commissioners court could contract with the Department of Labor under federal statutes for services quite similar in some respects to the projects permissible under a CETA comprehensive manpower plan so long as the contract limited the program to "paupers, the indigent, the needy, and the poor."  Attorney General Opinion M-605 (1970).  We believe that a county may serve as a prime sponsor under CETA and implement a comprehensive manpower plan which similarly limits its availability to the poor persons within the county.

We further note, however, the availability under CETA of a consortium form of prime sponsorship with two or more units of general local government participating, so long as one of the governments would qualify as a prime sponsor if acting alone, 29 U.S.C. § 812(a)(3) (1973), and also a multijurisdictional form of prime sponsorship pursuant to an agreement between the State and a unit of general local government having the requisite population.  29 C.F.R. § 95.3(b)(1) (1975).  These two forms of organization could provide more flexibility of operation, with the county participating only in services which aid the poor and needy within county limits, and other programs implemented by the other participants in the consortium or multijurisdictional agreement.  Cf. Attorney General Opinion M-689 (1970).

Your next question is whether Texas law prohibits cities and counties, seeking status as local prime sponsors, from making direct application for, and receiving, federal funds for the types of programs contemplated by CETA.  You have referred us specifically to section 11.02(c) of the Education Code, which reads:

> Except for agreements entered into by the
> governing board of a state university or
> college, the Central Education Agency shall
> be the sole agency of the State of Texas
> empowered to enter into agreements with
> respect to education undertakings, including
> provision of school lunches and the construc-
> tion of school buildings, with an agency of the
> federal government.  No county board of educa-
> tion or board of trustees of a school district
> shall enter into contracts with, or accept
> money from, an agency of the federal govern-
> ment except under rules and regulations pre-
> scribed by the Central Education Agency.

We do not believe that section 11.02(c) prevents cities
and counties from contracting directly with the federal
government to serve as local prime sponsors of CETA programs.
Section 11.02(a) gives to the Texas Education Agency "general
control of the system of public education," and we believe
that the "education undertakings" referred to in section
11.02(c) must likewise be a part of the "system of public
education" to come within the scope of that section.  CETA
is clearly not a part of the system of public education.  The
purpose of CETA is:

> [T]o provide job training and employment
> opportunities for economically disadvantaged,
> unemployed, and underemployed persons, and to
> assure that training and other services lead
> to maximum employment opportunities and enhance
> self-sufficiency. . . .   29 U.S.C. § 801 (1973).

CETA manpower services include a broad range of programs and
activities, including referral services, health care, medical
care, child care, assistance in securing bonds and transitional
public service employment programs.  29 U.S.C. § 811 (1973).
The programs created by CETA would be in the realm of employ-
ment programs, rather than traditional programs of public
education.  Not insignificantly, CETA programs are admin-
istered on the federal level by the Department of Labor --
 not the Department of Health, Education and Welfare.  It
is, therefore, our opinion that CETA programs are not within
the scope of section 11.02(c) of the Education Code, even
though some aspects of CETA services may be described broadly

as "educational" in nature.  To find otherwise would require that numerous federally funded programs with some educational aspects, such as family planning services, maternal and child health services, child abuse programs and law enforcement assistance programs, could be contracted for only by the Texas Education Agency.  We think it clear that the Legislature did not intend such a result in enacting section 11.02(c).

Finally, you have asked whether the answers to either of the foregoing questions differ for funds appropriated through the Governor under 29 U.S.C. §§ 813(c) and 822 (1973). Under these two sections, five per cent of CETA's funds are to be appropriated to State governors for assisting local prime sponsors in providing vocational education and related services.  The statute and regulations require that programs to be provided with these funds be pursuant to an agreement between the local prime sponsor and the State board having authority over vocational education -- in Texas, the Texas State Board for Vocational Education.  29 U.S.C. § 822(c) (1973); 29 C.F.R. § 95.58 (1975).

Applicable regulations require the local prime sponsor to submit to the State Board for Vocational Education its plan for use of the section 813(c) funds appropriated for use in its area; the only constraint on the authority of the Board to approve or disapprove the plan is that such plan must be consistent with the prime sponsor's comprehensive manpower plan.  29 C.F.R. § 95.58(a) (1975).  The very nature of an "agreement," as this arrangement is denominated in the statute and regulations, is that it is not consummated until both parties are satisfied with the terms which result. Since federal law gives the State Board for Vocational Education the power to approve or disapprove the plan, and limits that power only by requiring that the plan be consistent with the prime sponsor's comprehensive manpower plan, we believe the State Board is free to impose any reasonable limitations upon the expenditure of section 813(c) funds, whether or not required by State law, so long as the plan finally approved by the State Board is consistent with the Act and regulations and the prime sponsor's comprehensive manpower plan.

### S U M M A R Y

Texas statutes do not prohibit munici-
palities from serving as local prime
sponsors under the Comprehensive Employ-
ment and Training Act (CETA), so long as
the local city charter authorizes the city
to provide the types of services contemplated
in CETA.  Counties may also serve as prime
sponsors pursuant to their statutory duty
to provide for poor persons within the county.
Neither cities nor counties are prohibited
from entering into agreements with the federal
government such as the comprehensive manpower
plans required of prime sponsors.  The State
Board for Vocational Education may impose
reasonable limitations in providing vocational
education services to prime sponsors with CETA
funds appropriated to it through the Governor.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

jwb